UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>STEVEN KENT AUSTIN,<br><br>　　　　　　Defendant. | ) CASE NO. CR 07-01071 MMM<br>)<br>) ORDER GRANTING CHAPTER 7<br>) TRUSTEE'S MOTION TO INTERVENE<br>) FOR LIMITED PURPOSE OF<br>) ACCESSING JUDICIAL RECORDS<br>)<br>)<br>)<br>)<br>) |

## I. BACKGROUND

On March 17, 2008, Steven Austin pled guilty to one count of mail fraud in violation of § 18 U.S.C. § 1341, and one count of subscribing to a false tax return in violation of 26 U.S.C. § 7206(1).[1] On August 13, 2009, Austin was sentenced to thirty-six months in custody, to be followed by three years of supervised release.[2] He was also ordered to pay $17,332,971.14 in restitution, including an immediate partial payment of $6 million plus interest, and a $200 special

---

[1] Information, Docket No. 1 (Sept. 27, 2007); Minutes of Change of Plea Hearing, Docket No. 18 (Mar. 17, 2008).

[2] Minutes of Sentencing, Docket No. 89 (Aug. 13, 2009).

assessment.[3] On May 2, 2014, Diane Weil, Chapter 7 Trustee for the bankruptcy estate of debtor TAG Entertainment Corp. and TAG Entertainment, Inc. (collectively "TAG") filed a motion to intervene for the limited purpose of requesting that the court unseal documents filed in this case.[4] The government and Austin oppose the motion.[5]

The trustee's motion follows ongoing efforts by certain TAG creditors to obtain payment from the existing $6 million restitution fund. Austin was TAG's sole principal.[6] On April 11, 2008, Quantum Production Services, LLC and Terry Kennedy (collectively "Quantum") obtained a $3,090,962.80 default judgment against TAG in San Diego Superior Court.[7] The state court also ordered that a joint venture between TAG and Quantum be wound up and dissolved, and gave Quantum authority to wind up the venture's affairs.[8]

On July 14, 2009, Quantum filed an action in federal court against Austin and the United States seeking declaratory relief under 28 U.S.C. § 2201 and an order permitting it to withdraw money from the restitution fund to pay the outstanding judgment, under 28 U.S.C. § 2042.[9] Quantum filed a motion for default judgment on October 6, 2009,[10] which Judge Philip Gutierrez denied on November 19, 2009. Judge Gutierrez also dismissed Quantum's first amended

---

[3] *Id.* The amount of restitution ordered was subsequently increased to $42 million. Government's Opposition to Chapter 7 Trustee's Motion to Intervene for Limited Purpose of Accessing Judicial Records ("Gov't Opp."), Docket No. 120 (May 20, 2014) at 3.

[4] Chapter 7 Trustee's Motion to Intervene for Limited Purpose of Accessing Judicial Records ("Motion"), Docket No. 117 (May 2, 2014).

[5] Gov't Opp.; Opposition to Motion to Intervene for Limited Purpose of Accessing Judicial Records ("Austin Opp."), Docket No. 121 (May 22, 2014).

[6] Declaration of Richard S. Van Dyke ("Van Dyke Decl."), Docket No. 118 (May 2, 2014), ¶ 5.

[7] Austin Opp., Exh. C, Exh. A.

[8] *Id.*

[9] Gov't Opp., Exh. 2 ("Nov. 19, 2009 Order") at 2.

[10] *Id.*

complaint with prejudice.[11] He found, *inter alia*, that Quantum's claim was barred by sovereign immunity.[12] The Ninth Circuit affirmed on different grounds; while it held that sovereign immunity did not apply, it concluded that the doctrine of *custodia legis* prevented Quantum from attaching or otherwise accessing funds deposited with the court.[13] The Ninth Circuit determined, however, that Quantum could have sought a contingent writ of attachment against the funds to protect its right to obtain any excess proceeds above the amount needed to pay Austin's criminal fines and restitution. It directed that Quantum's complaint be dismissed without prejudice to the filing of an amended complaint.[14]

On December 16, 2009, TAG filed a voluntary Chapter 7 bankruptcy petition.[15] Weil was thereafter appointed TAG's trustee.[16] TAG's creditors include Quantum and Kennedy.[17] Richard Van Dyke, the attorney who represented Quantum and Kennedy in their state and federal court actions, now represents Weil.[18]

Weil contends that Austin fraudulently transferred monies from TAG, and has initiated three adversary proceedings in an attempt to collect these funds.[19] On August 11, 2010, Weil filed an adversary action against the United States to collect the $6 million Austin transferred to the United States in partial payment of his restitution obligation.[20] On December 15, 2011, Weil filed

---

[11]*Id*. at 6.

[12]*Id*. at 4-6.

[13]Govt Opp., Exh. 3 ("Ninth Circuit Decision").

[14]*Id*.

[15]Van Dyke Decl., ¶ 7.

[16]Motion at 1.

[17]Austin Opp., Exh. A.

[18]Austin Opp., Exhs. B, C, E, F.

[19]Motion at 1; Van Dyke Decl., ¶¶ 9, 10, 15.

[20]Van Dyke Decl., ¶ 10.

3

separate adversary actions against Austin and his wife, Kathleen, seeking to recover monies she contends were fraudulently transferred from TAG.[21] In order to litigate these adversary actions, Weil seeks access to sealed portions of Austin's criminal file, which she believes contains information relating to such transfers.[22] Specifically, she asks the court to unseal the following documents:[23]

1. Plea Agreement for Defendant Steven Kent Austin;[24]
2. Government's Filing of Victim Impact Statements in Connection with Sentencing;[25]
3. Government's Position Re: Sentencing Position;[26]
4. Confidential Addendum to Defendant's Position with Regard to Sentencing Factors; Exhibits;[27]
5. Defendant's Response to the Government's Position Re: Sentencing; Exhibits;[28]
6. Government's Reply to Defendant's Response to the Government's Position Re: Sentencing;[29]
7. Parties' Stipulation Re Restitution; Declaration and Exhibit;[30]
8. Government's *Ex Parte* Application for an Order Re: Restitution; Declaration and

---

[21] Van Dyke Decl., ¶ 15.

[22] Motion at 6; Van Dyke Decl., ¶ 16.

[23] Motion at 6-7.

[24] Docket No. 21 (Mar. 17, 2008).

[25] Docket No. 53 (July 1, 2009).

[26] Docket No. 58 (July 7, 2009).

[27] Docket No. 59 (July 7, 2009).

[28] Docket No. 63 (July 31, 2009).

[29] Docket No. 68 (Aug. 4, 2009).

[30] Docket No. 86 (Oct. 19, 2009).

4

Exhibit;[31] and

9. Government's *Ex Parte* Application for an Order Re: Restitution; Declaration and Exhibit.[32]

## II. DISCUSSION

### A. Legal Standard Governing Motions to Intervene

While Rule 24 of the Federal Rules of Civil Procedure explicitly allow for intervention, the Federal Rules of Criminal Procedure contain no analogous provision. See FED.R.CIV.PROC. 24; *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) ( "The Federal Rules of Criminal Procedure make no reference to a motion to intervene in a criminal case"); see also *United States v. Blagojevich*, 612 F.3d 558, 559 (7th Cir.2010) (same). Several jurisdictions, however, have held that motions to intervene are procedurally proper where the public seeks to access court documents. See, e.g., *In re Associated Press*, 162 F.3d 503, 507 (7th Cir. 1998); see also *Aref*, 533 F.3d at 81; *United States v. Brooklier*, 685 F.2d 1162, 1168 (9th Cir. 1982); *United States v. Criden*, 675 F.2d 550, 559 (3d Cir. 1982); *Stephens Media, LLC v. Eighth Judicial Dist. Ct.*, 125 Nev. 849, 859 (2009) ("[S]everal federal jurisdictions have held that because the First Amendment implicitly guarantees the right to access criminal trials, motions to intervene are procedurally proper when the public or press seeks to intervene for the limited purpose of accessing a criminal proceeding or court documents"). Here, neither the government nor Austin disputes that Weil's request to intervene is procedurally proper.

### B. Legal Standard Governing Access to Judicial Records

The public has a qualified right of access to judicial proceedings and documents, under both the common law and the First Amendment. *Phoenix Newspapers v. United States Dist. Ct.*, 156 F.3d 940, 946 (9th Cir. 1998) ("[The First Amendment recognizes] a general right to inspect and copy public records and documents, including judicial documents and records"); *id.* at 946

---

[31]Docket No. 81 (Oct. 22, 2009).

[32]Docket No. 107 (Jan. 12, 2010).

5

("[T]here is a strong presumption in favor of the common law right to inspect and copy judicial records"); see also *In re Copley Press, Inc.*, 518 F.3d 1022, 1029 (9th Cir. 2008) ("In addition to the public's First Amendment right, the public also has a 'common-law' right 'to inspect and copy public records and documents,'" quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).

The right to public access, however, is not absolute. *Copley Press*, 518 F.3d at 1029 ("'[The C]ommon-law' right . . . 'is not absolute,' and doesn't apply to 'documents which have traditionally been kept secret for important policy reasons,'" quoting *Nixon*, 435 U.S. at 597, and *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989)). "Under the common law, the presumption of access can be rebutted by countervailing factors that outweigh public interests. One seeking to deny First Amendment access confronts a heavier burden than one seeking to deny common law access, but access is nonetheless qualified." *United States v. Ferris*, No. CR–09–0037–LRS, 2009 WL 3672072, *3 (E.D. Wash. Nov. 4, 2009). See *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006) ("Notwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand").

The First Amendment right can be overcome if "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13-14 (1986) ("*Press Enterprise II*") (internal quotation marks and citation omitted). "The party seeking to seal the documents in question bears the burden of showing that higher values overcome the presumption of access." *United States v. King*, No. 10 Cr. 122(JGK), 2012 WL 2196674, *2 (S.D.N.Y. June 15, 2012).

Courts analyzing the qualified First Amendment right of public access to criminal proceedings and records follow a two-step framework. *Press-Enterprise II*, 478 U.S. 1; *United States v. Inzunza*, 303 F.Supp.2d 1041, 1044 (S.D. Cal. 2004). The court first determines whether a qualified First Amendment right of access attaches to the proceedings or documents in

question. This step "emphasize[s] two complementary considerations." *Press-Enterprise II*, 478 U.S. at 8. First, the court considers "whether the place and process have historically been open to the press and general public." *Id.* It next considers "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.*; *Oregonian Publ'g Co. v. United States Dist. Ct.*, 920 F.2d 1462, 1465 (9th Cir. 1990). If these two "considerations of experience and logic" favor disclosure, a qualified First Amendment right of access attaches to the documents in question. *Press-Enterprise II*, 478 U.S. at 9. Even if there is not a history of public access, however, the fact that the proceedings would benefit from public scrutiny can suffice to show the existence of a First Amendment right. *Copley Press*, 518 F.3d at 1026; *id.* at 1026 n. 2 (noting that the two inquiries have been denominated the "experience and logic" test, that they are "not separate inquiries, and that "[w]here access has traditionally been granted to the public without serious adverse consequences, logic necessarily follows. It is only where access has traditionally not been granted that we look to logic. If logic favors disclosure in such circumstances, it is necessarily dispositive").

      Once the court determines that a qualified First Amendment right of access exists, it can be overcome only if "'(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest.'" *Copley Press*, 518 F.3d at 1028 (quoting *Oregonian Publ'g Co.*, 920 F.2d at 1466); *Press-Enterprise II*, 478 U.S. at 13-14. The court must articulate the compelling interest at issue, and make "findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*").

      Analyzing whether there is a common law right of access is similar. *Inzunza*, 303 F.Supp.2d at 1045 n. 1. See *Times Mirror*, 873 F.2d at 1210 (no common law right of access where there is neither a history of public access nor an important public need). See also *United States v. Strevell*, No. 05 Cr. 477, 2009 WL 577910, *4 (N.D.N.Y. Mar. 4, 2009) (discussing the standard for public access under both common law and the First Amendment).

      Judicial documents should be sealed in their entirety only if necessary. See *Aref*, 533 F.3d

7

at 83. Redaction can assist in narrowing sealing requests, but the court should not exclusively delegate redaction to a party. See *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995). Additionally, courts should not redact documents if doing so renders the unredacted information unintelligible. See *United States v. Amodeo*, 71 F.3d 1044, 1052 (2d Cir. 1995).

      C.      **Whether the Court Should Unseal the Documents**

           1.      **Plea Agreement and Sentencing Memoranda**

The first document Weil asks the court to unseal is Austin's plea agreement; the third through sixth documents are sentencing memoranda. Historically, the public has had access to such records.[33] *United States v. Rivera*, 682 F.3d 1223, 1229 (9th Cir. 2012) ("[T]he First

---

[33] The government and Austin make several arguments suggesting, in various ways, that the court should deny the motion because the information contained in the sealed documents is not relevant to the underlying litigation. Both the government and Austin assert that the court need not reach the merits of Weil's motion, and can deny the motion simply by finding that the documents she seeks to unseal do not contain the information she seeks. (Gov't Opp. at 4-5; Austin Opp. at 5.) The government acknowledges the documents mention that the $6 million Austin paid in restitution came from the sale of his Malibu home, but asserts this is not the type of information Weil appears to seek. Rather, it contends, Weil seeks information on the source of funds used to purchase the house in the first instance. (*Id*. at 4. n. 3.) Weil states she "has determined that the documents will not only shed light on the allegations set forth in the Trustee's adversary actions, but also provide information essential to Trustee's investigation of Debtors' financial affairs." (Motion at 1-2; Van Dyke Decl., ¶¶ 6-18.) Specifically, she seeks information concerning Austin's management of TAG; investments in TAG; how Austin's criminal activity may have caused TAG's bankruptcy; and transfers Austin made from TAG. (Motion at 6; Reply at 5.) Although the government asserts no such information is contained in the documents, and that the court can deny the motion to intervene on this basis, it cites no authority for the proposition that the public's right of access to judicial documents is limited or subject to a requirement that the party seeking access demonstrate the documents are relevant to collateral proceedings, or that it otherwise has a need for information that can only be satisfied by unsealing records. Whether the documents contain the information Weil seeks may, however, be pertinent in assessing whether the government and Austin have shown that countervailing or compelling interests justify keeping the records sealed.

Austin argues that many of the issues raised in Weil's motion were mooted by the Ninth Circuit's decision that the United States cannot be held liable as a subsequent transferee because it had a valid judgment and "got [to the funds] first," and by its determination that Quantum cannot attach or access funds deposited with the court or prevent the court from disposing of the property to satisfy the purposes for which it was deposited. (Austin Opp. at 3-4.) The court certainly agrees that the Ninth Circuit's ruling will make it difficult, if not impossible, for Weil

Amendment right of access applies to sentencing proceedings"); *United States v. Kravetz*, 706 F.3d 47, 57 (1st Cir. 2013) (holding, in a case of first impression, that sentencing memoranda are judicial documents subject to the common law presumption of public access); *United States v. Alcantara*, 396 F.3d 189, 199 (2d Cir. 2005) ("[A] qualified First Amendment right of public access attaches to sentencing proceedings"); *Oregonian Publ'g Co.*, 920 F.2d at 1466 ("We . . . hold that the press and public have a qualified right of access to plea agreements and related documents under the first amendment"); *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (right of access to "plea agreements and related documents"); *United States v. Haller*, 837 F.2d 84, 86 (2d Cir. 1988) (holding there was a First Amendment right of access requiring that the district court make findings supporting an sealing the entire plea agreement, but concluding that the preservation of grand jury secrecy and the sensitivity of an ongoing criminal investigation justified sealing and redaction of one paragraph in the agreement); *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986) (holding that there was a First Amendment right of access, and that the district court was required to comply with procedural and substantive requirements before denying access to transcripts of plea and sentencing hearings and documents filed in connection with those hearings); *United States v. Kooistra*, 796 F.2d 1390, 1391 (11th Cir. 1986) (holding that there was a First Amendment and common law right of access and that the district court was required to articulate its reasons for denying a newspaper's motion to unseal a plea agreement and other documents); *United States v. Chanthaboury*, No. 2:12–cr–00188–GEB, 2013 WL 6404989, *1 (E.D. Cal. Dec. 6, 2013) ("'This right of access extends to materials submitted to the Court in connection with sentencing that the Court is asked to consider,'" quoting *King*, 2012 WL 2196674 at *1); *id.* ("'[T]he public has a strong right to

---

to recoup the funds deposited in the court's registry. While this may be relevant in assessing whether the government and Austin have shown that countervailing or compelling interests justify keeping the records sealed, it does not, standing alone, provide a reason to deny Weil's motion. Finally, Austin contends the motion is an improper attempt to circumvent discovery rules in the bankruptcy proceeding, where discovery is purportedly closed. (*Id.*) This too provides no basis upon which to conclude that Weil has neither a First Amendment or common law right of access to the documents.

sentencing memoranda under the First Amendment,'" quoting *United States v. Dare*, 568 F.Supp.2d 242, 244 (N.D.N.Y. 2008)); *Strevel*, 2009 WL 577910 at *4 ("Sentencing memoranda are judicial documents and fall within the scope of [the First Amendment and common law right to access]").

The government concedes that historically, the public has been given access to plea agreements and sentencing memoranda. It asserts, however, that there is no public interest at stake here because Weil seeks access not to benefit the public, but rather to assist Austin's creditors, whom, it suggests, may have been complicit in Austin's crime.[34] As a result, the government contends, Weil's motion fails the "logic" prong. It asserts that Weil does not seek true public access, such as that pursued by news agencies acting for the public. Rather, it contends, she seeks access to advance the private objectives of interested parties.[35] Weil vigorously disputes this, and argues that she is acting on behalf of all of Austin's creditors. She notes that, to date, at least twenty-nine claims have been filed in the bankruptcy proceeding.[36] The court need not resolve this dispute, because even were the government's speculation accurate, the court does not agree that this would support a finding that there is no common law or First Amendment right of access. Rather, the fact that the public has historically had access to plea agreements and sentencing memoranda is dispositive in establishing a qualified right of access. *Copley Press*, 518 F.3d at 1026 n. 2 ("Where access has traditionally been granted to the public without serious adverse consequences, logic necessarily follows. It is only where access has traditionally not been granted that we look to logic").

The court thus considers whether sealing advances a compelling interest; whether there is a substantial probability that, in the absence of sealing, this interest will be harmed; and whether there are alternatives to sealing that would adequately protect the interest. The government contends the court has already determined that compelling interests justify sealing the documents

---

[34]Gov't Opp. at 6.

[35]*Id.* at 5-6.

[36]Reply at 3.

10

because it granted the parties' applications to seal.[37] The government is correct that the court earlier found it appropriate to seal the documents, and that in doing so, it evaluated whether the public's interest in having access to the documents was outweighed by other compelling interests. Because Weil has filed a motion to intervene and unseal the documents, however, the court believes it is appropriate to reexamine its earlier decision. See *United States v. James*, 663 F.Supp.2d 1018, 1028 n. 2 (W.D. Wash. 2009) ("Now that the CBC has filed this motion, the Court considers the sealing anew in light of the interests of the third party").

Austin argues that he and his family, including his minor child, will be directly harmed if the documents are unsealed.[38] He also contends that unsealing confidential documents in a criminal case, and disclosing them in civil litigation, will have a chilling effect on the willingness of criminal defendants to provide full and complete information to the court prior to sentencing, to cooperate, and to pay early restitution.[39]

The court agrees with Austin that there is information in the documents that, if publicly disclosed, could harm him and his family. In a sealed order, the court details the reasons it reaches this conclusion so that the record will be clear in the event of an appeal. Additionally, there is specific and detailed information in the documents concerning the victims of this crime that is private in nature. The government argues that the victims' privacy interests provide a compelling reason to maintain the documents under seal. The court agrees. Reflecting this value, Congress enacted the Crime Victims Rights Act, 18 U.S.C. § 3771, which identified as one of the rights crime victims must be afforded "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." *Id.*, § 3771(a)(8). Courts are specifically directed to "ensure that the crime victim[s] [are] afforded [this] right[ ]." *Id.*, § 3771(b). Victims' privacy, moreover, has been found to be a compelling reason to maintain criminal records under seal. See *Ferris*, 2009 WL 3672072 at *3. In this case, if the entirety of the documents Weil seeks to

---

[37]*Id.* at 7.

[38]Austin Opp. at 5.

[39]*Id.* at 6.

11

unseal were disclosed, the victims' interest in privacy would definitely be harmed.

Similarly, there is private information concerning members of Austin's family in the documents. Their privacy interests likewise provide a compelling reason to maintain at least portions of the documents under seal. See *United States v. Kravetz*, 706 F.3d 47, 63 (1st Cir. 2013) ("'Medical information is . . . 'universally presumed to be private, not public'"); *id.* at 62 ("'[P]rivacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records. . . . [F]amily affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public. Applying this framework to the third-party personal privacy interests asserted here, we note that some of the letters contain discussion of the ill health of members of the authors' families, incidents of domestic violence, and other domestic relations matters. This information is highly personal and appears to have no direct bearing upon the public's assessment of the sentences imposed. Under these circumstances, the privacy interests implicated by disclosure may overcome the presumption of public access").

This conclusion is reinforced by the fact that "the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598; see also *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting *Nixon*); *James*, 663 F.Supp.3d at 1020 (quoting *Nixon*). Here, as noted throughout this order, whether the documents contain the type of information Weil seeks is relevant in assessing whether there are compelling interests that justify keeping the records sealed. The court notes, in this regard, that having reviewed the documents in question, it does not believe they contain the information Weil seeks.[40] Thus, while the court does not adopt the government's

---

[40]As for the Ninth Circuit's ruling, while, under the doctrine of *custodia legis*, neither Weil nor any creditor can prevent the court from causing any remaining funds on deposit to be paid to victims owed outstanding restitution obligations, the court expresses no position as to whether the bankruptcy trustee is entitled to recoup the $6 million from the United States or pursue creditors who may have received more than their fair share of assets determined to be within TAG's bankruptcy estate.

argument that Weil is acting for an improper purpose, the fact that little purpose would be served by unsealing the records is a factor that supports the court's conclusion that the tripartite test set forth in *Copley Press*, 518 F.3d at 1028, is satisfied, and justifies maintaining at least a portion of the documents under seal.

The court believes that these findings, coupled with those set forth in the sealed order that accompanies this order, provide compelling reasons for sealing at least portions of the plea agreement and sentencing memoranda. *Ferris*, 2009 WL 3672072 at *3 ("Sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim," quoting *Lugosch*, 435 F.3d at 124). Having reviewed the documents, the court concludes that the compelling interests identified can be adequately protected by redacting portions of the documents and filing the redacted copies publicly. This will provide public access to those portions of the records that do not pose a threat of harm to Austin or his family, and do not invade the privacy of Austin's family members and the victims. See *Amodeo*, 44 F.3d at 147 ("we think that it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document"); *James*, 663 F.Supp.2d at 1021 (noting that the government and the defendant argued that a plea agreement and sentencing documents should remain sealed "in their entirety," but finding that "redacting some of the information" was sufficient to protect the compelling interests found). There are no alternatives to partial sealing that would adequately protect those compelling interests. The court notes, in this regard, that it has attempted to redact the documents in the narrowest way possible. Given their content, however, large portions of the documents will remain sealed.

### 2. Victim Impact Statements and Restitution Documents

Weil also seeks to unseal the victim impact statements, the parties' stipulation regarding restitution, and two *ex parte* applications filed by the government for a restitution order, as well as supporting declarations and exhibits. Because these documents concern Austin's sentencing, and the court relied on them in fashioning the restitution order entered as part of his sentence, the court concludes that there is a qualified right of access to the documents.

1  The government argues, however, that Weil's motion should be denied to protect the
2  privacy of Austin's victims.[41] It asserts that Kennedy and Weil may use the information such as
3  the victims' names, and the amounts they invested, to attempt to claw back the restitution paid the
4  victims out of the $6 million.[42] Austin similarly argues that victims' identifying information
5  should not be disclosed.[43] As noted, Weil denies any intention to harass the victims, and the court
6  declines to impute improper motives to her. Nonetheless, as previously noted, the privacy of
7  victims is routinely accepted as a higher value and countervailing factor outweighing the interest
8  in public disclosure. *Ferris*, 2009 WL 3672072 at *3. 18 U.S.C. § 3664, which sets forth the
9  procedure for enforcing an order of restitution, requires that the "privacy of any records filed . . .
10 pursuant to this section shall be maintained to the greatest extent possible, and such records may
11 be filed . . . in camera." 18 U.S.C. § 3664(d)(4). See also 18 U.S.C. § 3771(a)(8) (affording
12 crime victims "[t]he right to be treated with fairness and with respect for the victim's dignity and
13 privacy"). "Thus, the right to restitution and the right to privacy should complement one another
14 – rather than work at cross purposes." *United States v. Starr*, No. 10 CR 520(SAS), 2011 WL
15 1796340, *1 (S.D.N.Y. May 2, 2011). In light of the case law and governing statutes, the
16 victims' right to privacy provides a compelling interest in closure. Absent sealing, there is a
17 substantial probability that the victims' interest in privacy would be harmed. *Copley Press*, 518
18 F.3d at 1028. See *United States v. Gallion*, No. 2:07–39–DCR, 2011 WL 4015586 (E.D. Ky.
19 Sept. 9, 2011) ("Therefore, a district court in a restitution proceeding may seal a record if it finds
20 an overriding interest in maintaining the privacy of the records"); *Starr*, 2011 WL 1796340 at *1
21 ("Nor should the victim's information be disclosed when doing so would invade his or her
22 privacy").

23  The court must still consider, however, whether there exist any alternatives to closure that
24 would adequately protect the compelling interest. *Copley Press*, 518 F.3d at 1028. With respect

---

[41]Govt Opp. at 7-8.

[42]*Id.* at 8.

[43]Austin Opp. at 5.

to the victim impact statements, the court concludes it is not possible to redact all of the private information in these documents in a way that would render intelligible any remaining information intelligible. Consequently, the court concludes that the document should remained sealed in its entirety. As for the parties' stipulation concerning restitution, and the government's *ex parte* application for an order regarding restitution, the court has redacted those documents to protect the private information of individual victims. See *Amodeo*, 44 F.3d at 147.

### III. CONCLUSION

For the reasons stated, the court grants Weil's motion to intervene and grants in part her motion to unseal records. The court will unseal portions of the plea agreement (Docket No. 21), and portions of the sentencing memoranda (Docket Nos. 58, 59, 63). The court will not unseal the victim impact statements (Docket No. 53), but will unseal portions of the parties' stipulation regarding restitution (Docket No. 86) and the government's *ex parte* applications for an order regarding restitution (Docket Nos. 81 and 107).

DATED: June 2, 2014

                                      MARGARET M. MORROW
                              UNITED STATES DISTRICT JUDGE